# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 14-21819-CIV-ALTONAGA/O'Sullivan

**SAMUEL A. PERSAUD**,

     Plaintiff,

vs.

**BANK OF AMERICA, N.A.**, *et al.*,

     Defendants.

_____/

## **ORDER**

    **THIS CAUSE** came before the Court on Defendants, Bank of America, N.A. ("BOA"); U.S. Bank, N.A., as Trustee ("U.S. Bank" or "Trustee"); Countrywide Home Loans, Inc. ("Countrywide"); Nationstar Mortgage, LLC ("Nationstar"); and Lexington Insurance Company's ("Lexington['s]") (collectively, "Defendants['s]") Joint Motion . . . to Dismiss the Second Amended Complaint with Prejudice ("Motion") [ECF No. 22], filed June 13, 2014. Plaintiff, Samuel A. Persaud ("Persaud"), filed his Response . . . ("Response") [ECF No. 35] on July 9, 2014.   Defendants filed their Joint Reply . . . ("Reply") [ECF No. 37] on July 24, 2014. The Court has carefully considered the parties' written submissions, oral arguments, and applicable law.

## I. BACKGROUND[1]

    This matter arises out of a promissory note ("Note") and mortgage ("Mortgage") on real property in Miami-Dade County.   (*See* SAC ¶ 9; *id.*, Ex. A).   Plaintiff executed the Note and Mortgage with Countrywide on February 7, 2005, agreeing to repay the debt in regular installments by March 1, 2035.   (*See* SAC ¶ 9; Ex. A, 1).   The Mortgage was subsequently

---

[1] The allegations of the Second Amended Complaint ("SAC") [ECF No. 4-4]) are taken as true.

transferred to BOA, Countrywide's successor in interest.[2]   (*See* SAC ¶¶ 9–10).   According to

BOA, U.S. Bank owned the Note and Mortgage in 2005, while BOA serviced the loan as U.S.

Bank's agent.   (*See id.* ¶¶ 14–16).   Subsequently, Nationstar became the servicer of the

mortgage as BOA's successor in interest and currently services the loan.   (*See id.* ¶ 13).

 Plaintiff's Mortgage includes the following property insurance provision:

> Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.   This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. . . . If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.   Lender is under no obligation to purchase any particular type or amount of coverage.   Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.   Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.   Any amounts disbursed by lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.   These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

(*Id.* ¶ 41 (quoting Mortgage § 5)).   The Mortgage also states, "Lender may do and pay for

whatever is *reasonable or appropriate* to protect Lender's interest in the Property."   (*Id.* ¶ 42

(emphasis in original) (quoting Mortgage § 9)).

 At some time after entering into the Mortgage, Plaintiff's insurance policy lapsed.   (*See*

*id.* ¶ 51).   Plaintiff then paid the policy before the lender force-placed insurance on the property.

(*See id.*).   As a practice, "Lenders and mortgage servicers (here, BOA), purchase master or

"umbrella" insurance policies that cover the entire portfolio . . . . In exchange, [affiliated]

---

[2] At the time Countrywide serviced Plaintiff's Note and Mortgage, it underwent a name change, becoming BAC Home Loans Servicing LP ("BAC").   (*See* SAC ¶ 11).   BAC later merged with and into BOA.   (*See id.*).

insurance carriers . . . (here, [Lexington]) obtain the exclusive right to force place insurance on property securing a loan within the portfolio when the borrower's insurance lapses . . . ."   (*Id.* ¶ 44 (alterations added)).   BOA requires or permits its insurer Lexington to automatically force-place insurance when a borrower's insurance policy lapses.   (*See id.* ¶ 45).   In such event, the mortgage agreement permits "the lender to obtain force-placed coverage and charge the premium to the borrower rather than declare the borrow[er] in default."   (*Id.* ¶ 40 (alteration added)).   If the borrower's insurance lapse is not immediately discovered, the lender or servicer charges the borrower "past premiums" for "retroactive coverage[,]" even in the "absence of any claim or damage to the property during the period of lapse . . . ."   (*Id.* ¶ 45 (alterations added)).

"Once coverage is forced on the property, the lender or servicer charges the borrower for the insurance premiums and automatically deducts the amount from the borrower's mortgage escrow account, or adds it to the balance of the borrower's loan."   (*Id.* ¶ 46 (footnote call number omitted)).   Pursuant to this practice:

> The lender or servicer then pays the premium to the insurer (Defendant [Lexington] here) who then kicks back a portion of the premium to the mortgage lender and/or servicer (Defendant BOA here) or an affiliate of the lender or servicer as a "commission."   If to the lender's or servicer's affiliate, the affiliate then shares a portion of that payment with the lender or servicer, sometime in the form of "soft dollar" credits.   The money paid back to the lender or serv[ic]er's affiliate is not given in exchange for any services provided by the affiliate; it is simply grease to keep the force-placed machine moving.

(*Id.* ¶¶ 47–48 (capitalization deleted; alterations added)).

The lender's actions "are unconscionable and done in bad faith with the sole objective to maximize profits."   (*Id.* ¶ 51).   BOA is incentivized to force-place insurance policies "with inflated premiums . . . because the higher the cost of the insurance policy, the higher the kickback."   (*Id.* ¶ 49 (alteration added)).   Plaintiff "was charged hyper-inflated and illegitimate non-competitive 'premiums' for the force-placed insurance that included undisclosed kickbacks

CASE NO. 14-21819-CIV-ALTONAGA/O'Sullivan

to the Defendant, BOA or [its] affiliates . . . ."   (*Id.* ¶ 51 (alterations added)).

After the borrower's policy lapsed, BOA charged Plaintiff $16,858.36 for "subsidence insurance" without notice on July 13, 2009.   (*Id.* ¶ 18).   BOA created an escrow account with a negative balance and charged Plaintiff's account.   (*See id.* ¶ 46 n. 5).   BOA failed to remove the total charge for subsidence insurance from Plaintiff's account and continued charging Plaintiff.   (*See id.* ¶ 21).   Because the cost of the force-placed insurance premium is added to Plaintiff's Mortgage balance, the total interest paid by the borrower to the lender over the life of the loan is increased.   (*See id.* ¶ 50).

Upon learning of the charge, Plaintiff made various efforts to gather information from BOA and dispute the unauthorized insurance charge.   (*See id.* ¶¶ 20–26).   Plaintiff called BOA on multiple occasions and mailed BOA certified letters dated October 22, 2009; January 8, 2010; February 4, 2010; March 9, 2010; April 27, 2010; and July 5, 2011. (*See id.*).   BOA never responded to or acknowledged receipt of Plaintiff's correspondence.   (*See id.* ¶ 27).   "BOA and the other Defendants by virtue of privity and/or agency relationship have failed to remove the unauthorized charge," continue to charge Plaintiff late fees and interest, and improperly established an escrow account for Plaintiff's account.   (*Id.* ¶ 28).

According to an *American Banker* article published November 10, 2010, mortgage lenders and servicers have engaged in questionable practices concerning "force-placed insurance."   (*Id.* ¶ 29).   Lenders and servicers force-place insurance when a borrower's insurance policy lapses or the borrower fails to maintain sufficient hazard, flood, or wind insurance coverage on the property securing the loan.   (*See id.* ¶ 30).   When a lender force-places a new policy on the property, it charges the borrower premiums.   (*See id.*).   The practice of force-placed insurance is extremely profitable to mortgage lenders and servicers.

(*See id.* ¶¶ 30–31).

Insurers and affiliates enter into exclusive relationships with major mortgage lenders and servicers to provide force-placed insurance policies, often paying a percentage of the force-placed premium later charged to the borrower and offering subsidized administrative services to the lender or servicer.   (*See id.* ¶ 31).   Lenders often require borrowers to pay for backdated insurance coverage, even if no claims were made or coverage exceeds the legal requirements.   (*See id.* ¶ 32).   This practice artificially inflates the premiums charged to borrowers, resulting in premiums up to ten times greater than those available to consumers in the open market.   (*See id.* ¶ 34).   Plaintiff does not specifically challenge the practice of force-placed insurance but contests the manner in which Defendants force-placed his insurance without notice.   (*See id.* ¶ 30).

The SAC contains seven counts.   Count I is a claim for breach of contract against Defendants for acting in violation of Plaintiff's Mortgage.   (*See id.* ¶¶ 52–64).   Count II is a claim for breach of implied covenant of good faith and fair dealing in selecting a force-placed insurance policy.   (*See id.* ¶¶ 65–73).   In Count III, Plaintiff seeks damages for unjust enrichment against BOA, U.S. Bank, and Nationstar for retaining benefits from the force-placed insurance policy at Plaintiff's expense.   (*See id.* ¶¶ 74–85).   Count IV states a claim for breach of fiduciary duty owed to the borrower.   (*See id.* ¶¶ 86–91).   Count V states a claim for fraud in the inducement against BOA and U.S. Bank for falsely representing to Plaintiff he would not need to have an escrow account for insurance or tax purposes.   (*See id.* ¶¶ 92–97).   In Count VI, Plaintiff raises an unjust enrichment claim against Lexington for retaining excess premiums from Plaintiff's force-placed insurance at Plaintiff's expense.   (*See id.* ¶¶ 98–104).   Last, Count VII states a claim against Lexington for tortious interference with a business relationship

for entering into an exclusive relationship with BOA and/or U.S. Bank, which interfered with Plaintiff's rights under his Mortgage.   (*See id.* ¶¶ 105–09).

Defendants request dismissal of all counts of the SAC for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).   (*See generally* Mot.).   Plaintiff consents only to the dismissal of Countrywide without prejudice.   (*See* Resp. 10–11).

## II.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Twombly*, 550 U.S. at 555 (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss."   *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).   To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.* at 678 (alteration added) (citing *Twombly*, 550 U.S. at 556).

On a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff and takes the factual allegations as true.   *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).   The Court's analysis of a Rule 12(b)(6) motion "is limited primarily to the face of the complaint and the attachments thereto."   *Id.* at 1368.   The Court may also consider other documents to be part of the pleadings for purposes of Rule 12(b)(6) where a plaintiff refers to the documents in the complaint and those documents are central to plaintiff's claim.   *Id.* at 1369.

### III.   ANALYSIS

**A.     Introduction**

Defendants argue Plaintiff's claims, based on allegations the force-placed insurance premiums were too high, are barred by the primary agency jurisdiction doctrine and Florida insurance statutes that set the amount of premium.   (*See* Mot. 3; *see also id.* 5–9; Reply 1–4). Defendants contend their actions were valid and in compliance with the Mortgage because Plaintiff failed to maintain continuous insurance on his property.   (*See* Mot. 3).   They also assert Plaintiff does not allege the elements of each of his state law claims.   (*See id.*).   Before turning to these discrete arguments, the Court briefly addresses Defendants' general challenge to Plaintiff's allegations of liability.

Defendants seek dismissal of certain claims where liability is contingent upon showing an agency or successor-in-interest relationship.   (*See* Mot. 11–13, 17).   A successor only assumes the liabilities of its predecessor business if: "(1) the successor expressly or impliedly assumes obligations of the predecessor; (2) the transaction is a de facto merger; (3) the successor is a mere continuation of the predecessor; **or** (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor." *Cuervo v. Airport Services, Inc.*, 984 F. Supp. 2d 1333, 1340 (S.D. Fla. 2013) (emphasis in original; other citation omitted) (quoting *Bernard v. Kee Mfg. Co.*, 409 So. 2d 1047, 1049 (Fla. 1992)).   Defendants argue they are not actual parties to the Mortgage (*see id.* 17); BOA and Nationstar only acted as servicers of the Mortgage (*see id.*); Countrywide is not a predecessor-in-interest to BOA, nor is BOA to Nationstar (*see id.* 12, 17); and no wrongdoing is alleged against Nationstar (*see id.* 11–12).

Defendants claim Plaintiff's allegations Nationstar is liable as a successor-in-interest to BOA and BAC are "wholly" insufficient and "self-serving."   (Mot. 11–12).   Plaintiff includes

minimal allegations Defendants are successors-in-interest.   (*See, e.g.*, SAC ¶¶ 9–13 (the "Note and Mortgage were then transferred to BOA, as successor to Countrywide. . . ."; "Nationstar became, and is currently, the servicer of the subject loan and, as the successor servicer in interest to BOA, is liable for the conduct of BOA. . . ." (capitalization omitted; alterations added))). Although these allegations lack detail, they allege a basis for finding successor liability — successors expressly or impliedly assuming the obligations of the predecessor — and put Defendants on notice they may be liable as successors-in-interest.   *See Cuervo*, 984 F. Supp. 2d at 1340.   *Cf. Oginsky v. Paragon Props. of Costa Rica LLC*, 784 F. Supp. 2d 1353, 1368 (S.D. Fla. 2011) (finding plaintiffs' allegations LTS was "the managing and controlling member of Paragon" and Paragon's office had closed did "not put LTS on notice of why it was named as a defendant[,]" particularly where successor liability was first argued in plaintiffs' response to a motion to dismiss (alteration added)); *Infante v. Bank of Am. Corp.*, 680 F. Supp. 2d 1298, 1305 (S.D. Fla. 2009) (finding successor liability was not sufficiently alleged, where plaintiff's "meager allegations" that "Countrywide . . . is now owned by the Defendant" and "Countrywide . . . was purchased by the Defendant" were inadequate to infer a merger, de facto merger, or other form of successor liability for pre-acquisition torts committed by Countrywide (alterations added and in original; citation omitted)).   As in *Cuervo*, the SAC "is a little light on the specifics of how" Nationstar took over BOA's interest in the Mortgage, including the "purchase agreement, transfer of assets, etc.   But Plaintiff[] [is] not required to allege that level of detail to survive a motion to dismiss."   984 F. Supp. 2d at 1340 (alterations added; citation omitted).

With regard to BOA's liability, Defendants contend Countrywide is a legally distinct entity, was not BOA's predecessor-in-interest, and thus cannot be liable for the acts or omissions of Countrywide.   (*See* Mot. 29; Reply 17).   Defendants provide documentation from the State of

Florida Division of Corporations indicating Countrywide's corporate status.  (*See* Mot., Ex. A [ECF No. 22-1]).   The SAC alleges, however, that Countrywide is BOA's predecessor-in-interest. (*See* SAC 9–11, 93–97).   The Court declines to consider Defendants' evidence on a motion to dismiss.  *See Brooks*, 116 F.3d at 1368.

Defendants' attempt to distinguish BOA and Nationstar as mere *servicers* of the Mortgage to avoid liability is likewise unavailing on a motion to dismiss.  *See Williams v. Wells Fargo Bank, N.A.*, No. 11–21233–CIV, 2011 WL 4901346, at *4 (S.D. Fla. Oct. 14, 2011) ("Whether Wells Fargo Bank is the loan *owner, servicer,* or both, is irrelevant at this stage. Taking Plaintiffs' allegations as true, Wells Fargo is bound by the mortgage contracts, and any argument to the contrary fails at this motion-to-dismiss stage." (emphasis in original)).   In short, it is premature to dismiss all claims predicated on a theory of successor liability "without allowing the facts to develop" in discovery.  *Cuervo*, 984 F. Supp. 2d at 1341.

### B.    Primary Agency Jurisdiction Doctrine

Defendants argue Plaintiff's claims are barred by the primary jurisdiction doctrine.   (*See* Mot. 5).   Pursuant to the doctrine of primary jurisdiction, when a party invokes "the original jurisdiction of a trial court by asserting an issue which is beyond the ordinary experience of judges and juries, but within an administrative agency's special competence, the court should refrain from exercising its jurisdiction over that issue until such time as the issue has been ruled upon by the agency."  *Flo-Sun, Inc. v. Kirk*, 783 So. 2d 1029, 1037 (Fla. 2001) (footnote call number and citations omitted).   "[A] court of competent jurisdiction may dismiss or stay an action pending a resolution of some portion of the actions by an administrative agency."   *Smith v. GTE Corp.*, 236 F.3d 1292, 1298 n.3 (11th Cir. 2001) (alteration added) (quoting *Wagner & Brown v. ANR Pipeline Co.*, 837 F.2d 199, 201 (5th Cir. 1988)).   The primary jurisdiction doctrine "is not

CASE NO. 14-21819-CIV-ALTONAGA/O'Sullivan

designed to secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit, but instead is to be used only if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1349 (S.D. Fla. 2013) (internal quotation marks omitted) (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008)).

Florida's Office of Insurance Regulation ("OIR") regulates insurance polices and practices and has the authority to determine insurance premium rates.   (*See* Mot. 7; Reply 1).   Defendants contend "OIR is far better placed than a court or jury to evaluate the complex issues relating to the actuarial justifications or other factors supporting the various components that are included in Plaintiff's premium at issue, and whether that premium is 'inflated' or 'high-priced' because it includes commission and other costs."   (Mot. 7).   To bolster their argument, Defendants cite to cases emphasizing the complexities of the highly-regulated insurance industry and the expertise of regulatory agencies in assessing the reasonableness of insurance rates.   (*See id.*).

Plaintiff's claims regarding his force-placed insurance do not constitute issues of first impression.   The cases in this District cited by the parties were not referred to the OIR for an administrative decision when the practice of force-placed insurance or the reasonableness of the premium rate was not specifically in question.   *See Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1277–78 (S.D. Fla. 2009) (finding the filed rate doctrine[3] did not bar plaintiffs' force-placed insurance claims where plaintiffs did not complain of the excessive insurance rate, but rather that "defendant bank acted unlawfully when it chose this particular insurance company

---

[3] "[T]he filed rate doctrine recognizes that where a legislature has established a scheme for utility rate-making, the rights of the rate-payer in regard to the rate he pays are defined by that scheme. . . . [A]ny 'filed rate' — that is, one approved by the governing regulatory agency — is per se reasonable and unassailable in judicial proceedings brought by ratepayers." *Abels*, 678 F. Supp. 2d at 1277 (alterations added; internal citations and quotation marks omitted).

CASE NO. 14-21819-CIV-ALTONAGA/O'Sullivan

and this particular rate"); *Kunzelmann v. Wells Fargo Bank, N.A.*, No. 9:11–cv–81373–DMM, 2012 WL 2003337, at *2–3 (S.D. Fla. June 4, 2012). Plaintiff's claims do not implicate the primary jurisdiction doctrine because Plaintiff does not contest the reasonableness of the premium simply because of its high price. *See In re Horizon Organic Milk*, 955 F. Supp. 2d at 1349–50. Instead, Plaintiff emphasizes the manner in which the affiliate insurance carrier and premium rate were selected and fixed, including payment of impermissible kickbacks. (*See* SAC ¶ 30; *see generally* Resp.). Further, as noted by Plaintiff (*see* Resp. 5), the primary jurisdiction argument is unavailing as to BOA, U.S. Bank, and Nationstar because the Florida OIR does not regulate financial institutions. *See Abels*, 678 F. Supp. 2d at 1277–78.

The Court declines to dismiss this action or refer it to the OIR pursuant to the primary jurisdiction doctrine.

### C.    Florida's Unfair Insurance Trade Practices Act

Defendants contend Plaintiff's claims are not permitted on the basis of Florida's Unfair Insurance Trade Practices Act ("FUITPA"), Florida Statute section 626.9541, which regulates trade practices relating to the business of insurance. (*See* Mot. 8–9; Reply 3–4). Section 626.9541 defines certain unfair methods of competition and unfair or deceptive acts or practices, including "*Illegal dealings in premiums; excess or reduced charges for insurance.*" *Id.* § 626.9541(o) (italics in original). An enumerated violation is:

> Knowingly collecting as a premium or charge for insurance any sum in excess of or less than the premium or charge applicable to such insurance, in accordance with the applicable classifications and rates as filed with and approved by the office, and as specified in the policy . . . . or premiums and charges collected from a Florida resident in excess of or less than those specified in the policy and as fixed by the insurer. This provision shall not be deemed to prohibit the charging and collection, by surplus lines agents. . . of . . . taxes, or fees . . . , in addition to the premium required by the insurer . . . .

*Id.* § 626.9541(o)2. (alterations added).

11

CASE NO. 14-21819-CIV-ALTONAGA/O'Sullivan

Defendants assert the FUITPA applies to Plaintiff's claims, and as a result, judgment for Plaintiff would cause Defendants to violate Florida law.   (*See* Mot. 9).   According to Defendants, pursuant to section 626.9541(o)2., "Lexington is required by Florida law to collect from the Plaintiff exactly the premium specified in his lender-placed policy and fixed by Lexington.   There is no allegation in the SAC that . . . Defendant[s] charged the Plaintiff any amount as a premium other than exactly what was specified in his policy."   (*Id.* (alterations added)).   Defendants explain if Lexington were to charge less than the premium stated in the policy issued to Plaintiff, it would violate the FUITPA.   (*See id.*).

Defendants' rationale fails to persuade.   If the Court were to accept Defendants' reasoning, any successful force-placed insurance claim would violate Florida law, and a plaintiff's claim would never survive a motion to dismiss.   As the parties are aware and as is evident from their briefing, such is not the case.   Plaintiff's allegations of bad faith and unconscionable conduct call into question the legitimacy of Defendants' actions pursuant to the Mortgage, as well as the validity of Lexington's insurance provider contract, including the premiums designated there. Indeed, as discussed with regard to Count II, every contract is subject to an implied covenant of good faith and fair dealing.   It follows the FUITPA provision in question was intended to govern only legitimate premiums fixed by the Florida OIR or the insurance carrier in good faith. *See generally* FLA. STAT. § 626.9541; *cf. Abels*, 678 F. Supp. at 1277 ("[T]he Supreme Court 'has emphasized the limited scope of the filed rate doctrine to preclude damage claims only where there are *validly* filed rates.'" (emphasis added) (quoting *Fla. Mun. Power Agency v. Fla. Power & Light Co.*, 64 F.3d 614, 617 (11th Cir. 1995) (other citation omitted)).   Accepting Plaintiff's allegations he was "charged hyper-inflated and illegitimate non-competitive 'premiums' for the force placed

CASE NO. 14-21819-CIV-ALTONAGA/O'Sullivan

insurance that included undisclosed kickbacks" (SAC ¶ 51), it would be against public policy to enforce an insurance premium that was the product of bad faith.

It is certainly not clear Plaintiff's claims are barred by Florida Statute section 626.9541. The Court declines to dismiss Plaintiff's claims on this basis.

**D.      Breach of Contract — Count I**

Defendants argue Plaintiff does not state a claim for breach of contract where Plaintiff breached the Mortgage first, and the express terms of the Mortgage allow the lender to force-place insurance in the event of a lapse in the borrower's coverage.   (*See* Mot. 14).   According to Plaintiff, while the Mortgage may permit the practice of force-placed insurance, it does not sanction unreasonable or inappropriate conduct in contravention of the Mortgage's other provisions.   (*See* Resp. 13).

Contrary to Defendants' argument, the fact Plaintiff initially breached the Mortgage when his insurance policy lapsed does not preclude his breach of contract claim.   When a lender opts to continue a mortgage by force-placing insurance after a borrower's coverage lapses, the lender "waive[s] the right to rely upon [plaintiff's] failure to maintain insurance as a defense to [his] contract claims."   *Mahdavieh v. Suntrust Mortg., Inc.*, No. 13–62801–CIV, 2014 WL 1365425, at *3 (S.D. Fla. Apr. 7, 2014) (alterations added); *see also Hamilton v. Suntrust Mortg. Inc.*, No. 13–60749–CIV, 2014 WL 1285859, at *7 (S.D. Fla. Mar. 25, 2014) (hereinafter *Hamilton I*) ("'There are few principles of contract law better established, or more uniformly acknowledged, than the rule that when a contract not fully performed on either side is continued in spite of a known excuse, the right to rely upon the known excuse is waived . . . .'" (internal quotation marks and citation omitted)).   As in *Mahdavieh* and *Hamilton I*, the lender here opted to continue the Mortgage despite Plaintiff's breach, thus waiving this defense.   And as of the SAC's filing, Defendants are

continuing to enforce the Mortgage and charge Plaintiff force-placed insurance.

Defendants next challenge whether there was in fact a breach of the Mortgage.   (*See* Mot. 18).   Defendants assert insurance companies regularly undertake the practice of force-placed insurance; the Mortgage expressly permits force-placed insurance by an insurance carrier such as Lexington; and the Mortgage discloses insurance may be force-placed, charging a borrower higher costs "at Lender's option" if the borrower's coverage lapses.   (Mot. 13). Defendants argue "claims based on the alleged charging of a commission, 'kickback,' or 'other compensation' to a borrower as part of an LPI premium fail 'because [lender] disclosed that [borrower] would incur higher costs if it force-placed the insurance for her.'"   (*Id.* (alterations in original) (quoting *Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1111 (11th Cir. 2014)).   Defendants state, "'simply calling a commission a kickback doesn't make it one.   The defining characteristic of a kickback is divided loyalties.   But [the lender] was not acting on behalf of [the borrower] or representing her interests.   The loan agreement makes it clear that the insurance requirement is for *the lender's* protection.'"   (*Id.* at 34 (alterations in original) (quoting *Feaz*, 745 F.3d at 1111)). *See also Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 611 (7th Cir. 2013).

The district court in *Hamilton I* discussed similar issues at length, explaining although "*Cohen* and *Feaz* may have some factual similarity to this action — in that each involved force-placed insurance claims — both cases involved different state law and materially distinct claims than the case at bar."   2014 WL 1285859, at *8.   The plaintiffs in *Hamilton I* alleged defendants never notified them as to how much more expensive the force-placed premiums would be or that a portion of those premiums would be kicked back to the lender.   *See id.* at *9.   The court characterized "the gravamen of [p]laintiffs' claim" as a claim the lender "acted in bad faith by entering into exclusive agreements with . . . [d]efendants to force-place excessive insurance on

[p]laintiffs' properties in exchange for receiving a portion of the artificially-inflated premiums as unearned 'kickbacks.'"  *Id.* at \*10 (alterations added).  The lender's "substantial discretion to force-place insurance" was not so "absolute."  *Id.*  Although Defendants here insist the express terms of the Mortgage permit force-placed insurance, what Plaintiff protests, like the plaintiffs in *Hamilton I*, is the manner in which Defendants force-placed the insurance.

Defendants further argue Plaintiff's allegations the premiums include retroactive coverage and thus are "excess[ive] or unnecessary," do not constitute a breach of the Mortgage and are conclusory.  (Mot. 18 (alteration added)).  Plaintiff alleges the force-placed insurance was "excessive and unnecessary" because retroactive coverage does not protect Defendants' interest in the property, particularly in the "absence of any claim or damage to the property during the period of the lapse . . . ."  (SAC ¶ 45; *see id.* ¶ 56).  The Court has previously found these types of claims based on retroactive or backdated coverage viable.  *See generally Williams*, 2011 WL 4901346 (finding allegations of excessive force-placed insurance premiums that included retroactive coverage and kickbacks sufficient to state claims for unjust enrichment and breach of the covenant of good faith and fair dealing).  Plaintiff's allegations he "was charged hyper-inflated and illegitimate non-competitive 'premiums' for the force-placed insurance that included undisclosed kickbacks to the Defendant, BOA or [its] affiliates" (SAC ¶ 49), are sufficient to state a breach of contract claim.

Further, Plaintiff asserts BOA and/or U.S. Bank's unconscionable conduct violated section 9 of the Mortgage authorizing the lender to "do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property."  (Resp. 13 (emphasis omitted); *see* SAC ¶ 51).  For the same reasons, Plaintiff has sufficiently alleged Defendants' illegitimate premiums, including kickbacks and retroactive coverage, are not "reasonable or appropriate" and constitute a breach of

the Mortgage.   Plaintiff satisfies the three basic elements of a breach of contract claim — a Note and Mortgage, material breaches of the Mortgage, and damages to Plaintiff.   *See Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 857 F. Supp. 2d 1294, 1301 (S.D. Fla. 2012) (To prevail on a claim for breach of contract, a plaintiff must establish "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach.") (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009)).

### E.      Breach of Implied Covenant of Good Faith & Fair Dealing — Count II

Plaintiff claims BOA and/or U.S. Bank and Nationstar breached the Mortgage's implied covenant of good faith and fair dealing.   (*See* SAC ¶¶ 65–72).   Defendants contend Count II must be dismissed because Plaintiff has not identified any express terms breached; Plaintiff breached the Mortgage first; section 5 of the Mortgage gave Defendants discretion to force-place insurance; and allowing this claim would override section 5 of the Mortgage and materially alter the Mortgage's express terms.   (*See* Mot. 19–21).

"Under Florida law, every contract contains an implied covenant of good faith and fair dealing, requiring that the parties follow standards of good faith and fair dealing designed to protect the parties' reasonable contractual expectations." *Centurion Air Cargo, Inc. v. United Parcel Service Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005) (citation omitted).   "[W]here the terms of the contract afford a party substantial discretion to promote that party's self-interest, the duty to act in good faith nevertheless limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party." *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1097–98 (Fla. 1st DCA 1999) (alteration added; citation omitted).   To state a claim for breach of the implied covenant of good faith in Florida, "a plaintiff must allege 'an express term of a contract was violated.'" *Hamilton I*, 2014 WL 1285859, at *8 (quoting *Medinis v. Swan*, 955

CASE NO. 14-21819-CIV-ALTONAGA/O'Sullivan

So. 2d 595, 597 (Fla. 2d DCA 2007)); *see Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1329 (11th Cir. 2012) (same).

Plaintiff's allegations relate to express provisions in the Mortgage.  Plaintiff identifies a breach of section 9 of the Mortgage, which states "Lender may do and pay for whatever is *reasonable or appropriate* to protect the Lender's interest in the Property."  (SAC ¶ 42 (emphasis in original)).   In *Hamilton I*, the court found plaintiffs sufficiently alleged the express terms of their mortgages were violated where their claim related to the "express provisions in the Plaintiffs' mortgage contracts that gave SunTrust discretion to force-place insurance on Plaintiffs' properties if coverage lapsed."  2014 WL 1285859, at *8; *see also Abels*, 678 F. Supp. 2d at 1278–79 (holding plaintiffs stated a claim where they alleged facts showing lender acted in bad faith in exercising its discretion to force-place insurance).

Simply because section 5 of the Mortgage is silent as to the standards the lender is to employ in exercising its discretion to provide force-placed insurance does not excuse Defendants from the obligation to act in good faith.   *See Cox*, 732 So. 2d. at 1097 ("[T]he parties' intent to be bound by an enforceable contract raises an implied obligation of good faith to observe reasonable limits in exercising that discretion, consistent with the parties' purpose or purposes in contracting." (alteration added; citation omitted)).   Plaintiff has sufficiently alleged Defendants' actions were "unconscionable," motivated by "bad faith" and self-interest.   (SAC ¶¶ 50–51); *see also id.* ¶ 71 (outlining sixteen breaches by BOA and/or U.S. Bank)).

Although "the implied obligation of good faith cannot be used to vary the express terms of a contract," *Cox*, 732 So. 2d at 1098, Plaintiff does not seek to alter the Mortgage's terms. Plainly, he seeks to hold Defendants accountable for not exercising their discretion in good faith. (*See* SAC ¶ 70).   Plaintiff's allegations BOA and/or U.S. Bank, as a party to the Mortgage, and

Nationstar, as the current servicer, acted in bad faith in contravention of Plaintiff's reasonable expectations under the contract sufficiently state a claim for breach of the implied covenant.

### F.      Breach of Fiduciary Duty — Count IV

Defendants argue the four-year statute of limitations bars Plaintiff's breach of fiduciary duty claim in Count IV.   (*See* Mot. 26–27).   They also assert a lender does not owe a fiduciary duty to a borrower in an arm's length transaction.   (*See id.* 27–28).

Generally, the question of whether a claim is barred by the statute of limitations is best raised as an affirmative defense in the answer, rather than in a motion to dismiss.   *See Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317, 1328 (S.D. Fla. 2012) (citing *Cabral v. City of Miami Beach*, 76 So. 3d 324, 326 (Fla. 3d DCA 2011)).   "At the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute."   *Lindley v. City of Birmingham, Ala.*, 515 F. App'x 813, 815 (11th Cir. 2013) (alteration added) (quoting *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 n.13 (11th Cir. 2005)).

Pursuant to Florida law, there is a four-year statute of limitations for "[a]n action founded on negligence," FLA. STAT. § 95.11(3)(a), "[a] legal or equitable action founded on fraud," *id.* § 95.11(3)(j), and "[a]ny action not specifically provided for in these statutes" *id.* § 95.11(3)(p). Absent certain exceptions, such as equitable tolling or delayed discovery,[4] "the time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues."   *Id.* § 95.031.   "A cause of action accrues when the last element constituting the cause of action occurs."   *Id.* § 95.031(1).   "The last element constituting a cause of action for . . . breach of fiduciary duty is the occurrence of damages."   *Kelly v. Lodwick*, 82 So. 3d

---

4  In Florida, "[t]he discovery rule delays the accrual of a cause of action until the happening of an event likely to put the plaintiff on notice of the existence of a cause of action."   *Thomas v. Lopez*, 982 So. 2d 64, 67 (Fla. 5th DCA 2008) (alteration added; citation omitted).

CASE NO. 14-21819-CIV-ALTONAGA/O'Sullivan

855, 857 (Fla. 4th DCA 2011) (alteration added; citations omitted).

Plaintiff alleges Defendants failed to remove the unauthorized charge, continued charging him, and improperly established an escrow account to do so.   (*See* SAC ¶¶ 21, 28, 46 n.5). Plaintiff does not plead the dates the insurance premium payments were made or when the escrow account was established.   If "an obligation is continuing in nature, a party's 'ongoing nonperformance constitute[s] a continuing breach while the contract remain[s] in effect.'"   *Grove Isle Ass'n, Inc. v. Grove Isle Assocs., LLLP*, 137 So. 3d 1081, 1095 (Fla. 3d DCA 2014) (alterations in original; citation omitted) (allowing breach of contract claims within the five-year statute of limitations where complaint alleged defendant continually breached a declaration by charging annual fees and dues in excess of an initial membership fee).   It is not clear Plaintiff's claim is untimely.   *See Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1252 (11th Cir. 2003) (explaining the "statute of limitations issue" could not be resolved because it depended on "facts not yet in evidence" or by "construing factual ambiguities in the complaint" in favor of the defendants).   Because of the continuous nature of the alleged charges, and given Plaintiff does not specify the date the escrow account was established, the Court declines to dismiss the breach of fiduciary claim as time-barred.

Plaintiff asserts BOA's unilateral creation and management of an escrow account to charge Plaintiff force-placed insurance premiums established a fiduciary duty owed to him. (*See* Resp. 26–27).   The elements of a breach of fiduciary duty claim in Florida are: "the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages."   *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002) (footnote call number omitted). As the parties note, a lender generally does not owe a fiduciary duty to a borrower under Florida law.   *See Jaffe v. Bank of Am., N.A.*, 395 F. App'x 583, 590 (11th Cir. 2010); *Capital Bank v.*

CASE NO. 14-21819-CIV-ALTONAGA/O'Sullivan

*MVB, Inc.*, 644 So. 2d 515, 518 (Fla. 3d DCA 1994).   But a fiduciary duty may be found where "the lender [1] takes on extra services for a customer, [2] receives any greater economic benefit than from a typical transaction, *or* [3] exercises extensive control."   *Mahdavieh*, 2014 WL 1365425, at *5 (alterations and emphasis in original; internal quotation marks omitted) (quoting *Bld'g Educ. Corp. v. Ocean Bank*, 982 So. 2d 37, 41 (Fla. 3d DCA 2008)).   Further, "an escrow holder generally owes a fiduciary duty to the parties to the escrow transaction."   *Id.* (citations omitted).

Plaintiff alleges BOA and/or U.S. Bank took on extra services by unilaterally establishing and managing an escrow account over which the lender exercised extensive control.   (*See* SAC ¶¶ 87–88).   BOA received a greater economic benefit in that the lender charged Plaintiff an excessive amount of forced-placed premiums from which BOA and its affiliates then received impermissible kickbacks or other compensation.   (*See id.* ¶ 88).   Plaintiff alleges this amount was greater than what was contemplated in the Mortgage.   (*See id.*).   BOA allegedly breached its fiduciary duty by intentionally charging and withdrawing from escrow amounts covering kickbacks, fees, and other compensation, and by charging Plaintiff for backdated insurance coverage.   (*See id.*; Resp. 26–27).   Viewed in the light most favorable to Plaintiff, these allegations state a claim of breach of fiduciary duty.   *See Mahdavieh*, 2014 WL 1365425, at *5 (Allegations "STM, as the escrow holder, breached its fiduciary duty to Plaintiffs by charging them for unnecessary and excessive force-placed insurance . . . [and] STM received a greater economic benefit than from a typical mortgage transaction because it received unearned kickbacks in connection with its force-placed insurance scheme" were sufficient to sustain plaintiffs' claim of breach of fiduciary duty. (alterations added; citing cases)).

### G.      Fraud in the Inducement — Count V

Defendants challenge Plaintiff's claim for fraud in the inducement in Count V against BOA and U.S. Bank.  (*See* Mot. 29).  The parties agree Plaintiff has failed to raise sufficient allegations against U.S. Bank to state a claim.

To state a cause of action for fraudulent inducement, a plaintiff must plead: "(1) the defendant made a false statement about a material fact; (2) the defendant knew the statement was false when he made it or was without knowledge of its truth of falsity; (3) the defendant intended that the plaintiff rely and act on the false statement; and (4) the plaintiff justifiably relied on the false statement to his detriment."  *Barrett v. Scutieri*, 281 F. App'x 952, 953 (11th Cir. 2008) (citation omitted).  Further, Florida law requires "a plaintiff plead an injury "[r]esulting [from] acting in justifiable reliance on [a fraudulent] representation."  *Odyssey Marine Exploration, Inc. v. Unidentified, Shipwrecked Vessel or Vessels*, 512 F. App'x 890, 894 (11th Cir. 2013) (alterations in original; citation and internal quotation marks omitted).  Under Federal Rule of Civil Procedure 9(b), a plaintiff must also plead the circumstances constituting fraud with particularity.  *See also Zarrella v. Pacific Life Ins. Co.*, 755 F. Supp. 2d 1218, 1223–24 (S.D. Fla. 2010).

As the basis for his claim, Plaintiff alleges BOA, via Countrywide, "made one or more statements to Plaintiff to the effect that if Plaintiff agreed to pay a higher fee or rate, Plaintiff would not be required to establish and maintain an escrow account for insurance and/or taxes." (SAC ¶ 93).  Plaintiff alleges BOA via Countrywide "knew or should have known the statement . . . was false" (*id.* ¶ 94), "intended to induce Plaintiff to rely and act on the statement" (*id.* ¶ 95), Plaintiff relied on the statement in entering into the Mortgage and Note (*see id.* ¶ 96), and as a result, Plaintiff suffered damages (*see id.* ¶¶ 96–97).  These vague and conclusory allegations

simply mirror the elements of the tort and are insufficient to state a claim for relief, particularly under Rule 9's heightened pleading standard.   Consequently, Count V for fraud in the inducement is dismissed.

### H.   Unjust Enrichment — Counts III and VI

Plaintiff alleges claims for unjust enrichment against BOA, U.S. Bank, and Nationstar in Count III, and against Lexington in Count VI.   Defendants allegedly received benefits from inflated force-placed insurance premiums, kickbacks and commissions, captive reinsurance arrangements, and subsidized loan servicing costs.   (*See* SAC ¶ 75).   Defendants will be unjustly enriched if allowed to retain these benefits.   (*See id.* ¶¶ 84, 104).   Defendants argue the unjust enrichment claims fail because they are barred by the statute of limitations and the existence of Plaintiff's Mortgage and Note.   (*See* Mot. 22–24).   They further argue Plaintiff fails to satisfy the elements to state a claim for unjust enrichment.   (*See id.* 25–26).

A claim of unjust enrichment has four elements: "(1) the plaintiff conferred a 'direct benefit' on the defendant, (2) the defendant had knowledge of the benefit, (3) the defendant accepted or retained the benefit, and (4) it would be inequitable under the circumstances for the defendant to retain the benefit without paying fair value for it."   *Hamilton v. Suntrust Mortg. Inc.*, No. 13-60749-CIV, 2014 WL 1285868, at *3 (S.D. Fla. Mar. 28, 2014) (hereinafter *Hamilton II*) (citing *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 714 F.3d 1234, 1237 (11th Cir. 2013)) (other citations omitted).   "[A] plaintiff must show that the defendant received a direct benefit from the plaintiff."   *Id.* (alteration in original) (quoting *Malamud v. Syprett*, 117 So. 3d 434, 438 (Fla. 2d DCA 2013)).

The statute of limitations for unjust enrichment in Florida is four years.   *See* FLA. STAT. § 95.11(3).   Plaintiff's unjust enrichment claim is not barred by the statute of limitations for the

same reasons Plaintiff's fiduciary duty is not.   Defendants allegedly continue to charge excessive premiums and retain the related benefits.

Defendants next argue the lender-placed insurance and any charges related to it are governed by Plaintiff's Mortgage, and therefore the quasi-contractual claims of unjust enrichment fail as a matter of law.   (*See* Mot. 24–25).   Florida courts have held that "'a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter.'"   *1021018 Alberta Ltd. v. Netpaying, Inc.*, No. 8:10-CV-568-T-27MAP, 2011 WL 1103635, at *5 (M.D. Fla. Mar. 24, 2011) (quoting *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008)); *see also Zarrella*, 755 F. Supp. 2d at 1227.   However, causes of action may be pleaded in the alternative, even if the legal arguments are inconsistent.   *See* FED. R. CIV. P. 8(a), 8(d).   But a claim of unjust enrichment may only be pleaded in the alternative where one of the parties asserts the contract governing the dispute is invalid.   *See Zarrella*, 755 F. Supp. 2d at 1227 (quoting *In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1337–38 (S.D. Fla. 2002)).

Defendants insist the unjust enrichment claims are based on an express written contract and therefore fail.   (*See* Mot. 25).   But nowhere in the SAC does Plaintiff state all Defendants are parties to the Mortgage and Note and that these contracts expressly govern Defendants. Plaintiff only alleges he entered into a Mortgage and Note with Countrywide; contracts subsequently transferred to BOA.   And in their Motion, Defendants challenge the general sufficiency of the allegations of successor liability against Defendants precisely because the Mortgage may not expressly govern each of them.

To the extent Defendants challenge whether the Mortgage governs their relationships with Plaintiff, Defendants are essentially contesting the validity of the contract.   *See Williams*,

CASE NO. 14-21819-CIV-ALTONAGA/O'Sullivan

2011 WL 4901346, at *6.   While Plaintiff may certainly not recover under both theories against the same Defendant, Defendants' arguments that the unjust enrichment claims fail in light of the existence of Plaintiff's Mortgage are unavailing.   *See Kunzelmann v. Wells Fargo Bank, N.A.*, No. 9:11–cv–81373–DMM, 2012 WL 2003337, at *6 (S.D. Fla. June 4, 2012).

Defendants next argue Plaintiff did not confer any benefit on them, and if a benefit was conferred, retaining it is "not inequitable" because the Mortgage permitted the lender to force-place insurance if the borrower's policy lapsed.   (Mot. 25–26).   Defendants contend no benefit was conferred by Plaintiff because the force-placed insurance was automatically imposed without his consent or involvement.   (*See id.* 25).   The fact Plaintiff was unaware of or did not consent to the force-placed insurance premiums does not make the commissions or kickbacks any less a benefit conferred to Defendants at Plaintiff's expense.   Likewise, Defendants' alleged retention of benefits, including inflated premiums, commissions, and service fees, would be inequitable.   *See Williams*, 2011 WL 4901346, at *5 (finding plaintiffs directly conferred a benefit where the bank received kickbacks and/or commissions taken from plaintiffs' excessive insurance premium payments).

## I.     Tortious Interference with a Business Relationship — Count VII

Defendants argue Lexington did not interfere with Plaintiff's business relationship with BOA, nor induce BOA to breach its mortgage contract with Plaintiff.   (*See* Mot. 30).   Defendants also assert Lexington's actions were privileged, as Lexington issued an insurance policy pursuant to an agreement it had with BOA.   (*See id.* 31).

To state a claim of tortious interference with a business relationship a plaintiff must allege: "(1) the existence of a business relationship under which the plaintiff has legal rights; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified

24

interference with that relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the business relationship." *Bortell v. White Mountains Ins. Grp., Ltd.*, 2 So. 3d 1041, 1048 (Fla. 4th DCA 2009) (citation and internal quotation marks omitted); *see Gregg v. U.S. Indus., Inc.*, 887 F.2d 1462, 1473 (11th Cir. 1989). "[T]he tort of intentional interference with contract is meant to protect the parties (including third-party beneficiaries, assignees, and others having the rights of parties) to contracts. . . ." *CSY Liquidating Corp. v. Harris Trust & Sav. Bank*, 162 F.3d 929, 932–33 (7th Cir. 1998) (alterations added; citations omitted). "[I]nterference is unjustified where the interfering defendant is a stranger to the business relationship[;]" in other words, the defendant lacks "any beneficial or economic interest in, or control over, that relationship." *Hamilton II*, 2014 WL 1285868, at *6 (alterations added; citation and internal quotation marks omitted). Whether a defendant "'acted without justification . . . requires an examination of the defendant's conduct, its motive, and the interests it sought to advance.'" *Duty Free Ams., Inc. v. Estee Lauder Cos., Inc.*, No. 12-60741-CIV, 2014 WL 1329359, at *16 (S.D. Fla. Mar. 31, 2014) (alteration added; citation omitted).

Defendants insist the tortious interference claim fails because Lexington's conduct is privileged. (*See* Mot. 31–32; Reply 19–20). This privilege argument, however, is unavailing on a motion to dismiss. *See Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.*, 262 F.3d 1152, 1161 (11th Cir. 2001) ("[After] a plaintiff pleads and proves a prima facie case for tortious interference, the burden is on the defendant to avoid liability by showing his action is privileged[,]" and "whether an action is privileged is a jury question." (alterations added; citation and internal quotation marks omitted)).

Further, the "privilege is not unlimited," as "it does not afford an absolute shield to liability." *Hamilton II*, 2014 WL 1285868, at *7 (quoting *CSDS Aircraft & Leasing, Inc. v. Lloyd*

*Aereo Boliviano Airlines*, No. 09-CIV-22274, 2011 WL 1559823, at *5 (S.D. Fla. Apr. 22, 2011)).
"[E]ven for 'non-strangers' to a contract, the privilege to interfere is a valid defense only to the
extent the interference was done in *good faith.*   In other words, parties are disqualified from
asserting the privilege if they act *maliciously or with conspiratorial motives. . . .*"   *Id.* (alterations
added and in original; emphasis in original).   According to Defendants, Plaintiff does not allege
"improper conduct by Lexington," such as "physical violence, misrepresentations, illegal conduct
or threats of illegal conduct."   (Mot. 32).   As discussed, Plaintiff alleges Defendants acted in bad
faith, colluding to receive kickbacks and reinsurance, and failing to disclose these self-serving
activities to Plaintiff.

In challenging whether Plaintiff's allegations satisfy the elements of tortious interference,
Defendants contend Plaintiff must plead a "breach or termination of his Mortgage."   (Reply 18).
Defendants insist Plaintiff does not state a claim because he fails to allege "any business
relationship — prospective, ongoing, or otherwise — was not completed, [or was] terminated or
severed."   (*Id.* (alteration added)).   The Court declines to construe a claim for tortious
interference so narrowly.

The "breach" Defendants refer to essentially encompasses the third and fourth elements of
this cause of action.   "As a general rule, an action for tortious interference with a business
relationship requires a business relationship evidenced by an actual and identifiable understanding
or agreement which in all probability would have been completed if the defendant had not
interfered."   *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994)
(finding no claim for tortious interference where the underlying business relationship was
speculative).   However, the breach of a business relationship does not specifically require the
relationship be severed or the contract not be executed, even though these facts may be indicative

CASE NO. 14-21819-CIV-ALTONAGA/O'Sullivan

of breach and resulting damages.  *Cf. Smith v. Ocean State Bank*, 335 So. 2d 641, 643 (Fla. 1st DCA 1976) ("Even though appellant asserts no cause of action against Welton Smith for breach of contract, this in itself does not bar appellant from asserting a cause of action against appellee if the latter's conduct constitutes a tortious interference with appellant's business relationship with Welton Smith." (citation and internal quotation marks omitted)).

Plaintiff alleges Lexington entered into an exclusive relationship with BOA and/or U.S. Bank to force-place insurance on Plaintiff's property at inflated and unnecessary premium rates. Lexington allegedly provided compensation to BOA and/or U.S. Bank in exchange for exclusivity, and purposefully and knowingly charged Plaintiff exorbitant premiums in contravention of his rights under the Mortgage.   Under this practice, the cost of insurance was allegedly up to ten times more expensive than borrower-placed insurance.   These allegations are sufficient to show Lexington, in executing the force-placed insurance scheme, acted in bad faith to interfere with BOA and/or U.S. Bank's business relationship with Plaintiff.  *See Hamilton II*, 2014 WL 1285868, at *7; *Williams v. Wells Fargo Bank, N.A.*, No. 11–21233–CIV, 2011 WL 4368980, at *12 (S.D. Fla. Sept. 19, 2011).   Accordingly, Plaintiff sufficiently alleges Lexington's actions were not justified and constituted a breach of the business relationship.   Likewise, Plaintiff has adequately pleaded he suffered damages in the form of unnecessary and inflated premiums.

## IV.   CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Defendants' Motion **[ECF No. 22]** is **GRANTED in part** and **DENIED in part**.   Defendant Countrywide is dismissed.   Count V is dismissed with leave to amend.   Plaintiff has until September 4, 2014 to file an amended complaint.

27

CASE NO. 14-21819-CIV-ALTONAGA/O'Sullivan

**DONE AND ORDERED** in Chambers at Miami, Florida, this 27th day of August, 2014.

_____

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT COURT**

cc:     counsel of record

28